IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES RANDALL FENIMORE,                      Civ. No. 6:21-cv-01538-AA

               Plaintiff,            **OPINION & ORDER**

     v.

SPECIALIZED LOAN SERVICING, LLC;
U.S. BANK, N.A., AS TRUSTEE
RELATING TO CHEVY CHASE
FUNDING LLC MORTGAGE BACKED
CERTIFICATES SERIES 2007-1,

               Defendants.

---

AIKEN, District Judge.

      This case comes before the Court on Motion to Dismiss filed by Defendants. ECF No. 17. The Court concludes that this motion is appropriate for resolution without oral argument. For the reasons set forth below, the motion is GRANTED and the Complaint, ECF No. 1, is DISMISSED with leave to amend.

## LEGAL STANDARD

      To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations,"

it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id.*

## BACKGROUND

In December 2006, Plaintiff entered into a Note and Deed of Trust to refinance his residence in Bend, Oregon. Compl. ¶ 7, ECF No. 1; Edling Decl. Ex. 1.[1] ECF No. 18.

In 2009, Plaintiff fell behind on his mortgage payments. Compl. ¶ 10. On February 24, 2010, Defendant Specialized Loan Servicing LLC ("SLS") became the servicer of the mortgage. *Id.* ¶ 11.

Defendant U.S. Bank, N.A. as trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates 2007-1 ("USB") is the holder of the note and, in 2010, USB initiated foreclosure proceedings on the deed of trust in Oregon state court. Compl. ¶¶ 4, 12. USB was successful in its foreclosure action and a judgment of

---

[1] Defendants have submitted the Deed of Trust as Exhibit 1 of the Edling Declaration and request that the Court take judicial notice of the Exhibit. Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself if the plaintiff "refers extensively to the documents or the documents form the basis of the plaintiff's claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotation marks and citation omitted). The Deed of Trust, as the basis for the debtor-creditor relationship, is frequently referred to the Complaint and forms the basis of Plaintiff's claims. Plaintiff does not dispute the authenticity of the Deed of Trust and cites to it in his Response. Pl. Resp. at 2. ECF No. 35. The Court will therefore take judicial notice of Exhibit 1 to the Edling Declaration.

foreclosure was entered in July 18, 2014. *Id.* ¶ 12.

Following entry of judgment, Plaintiff entered negotiations with USB to resolve the foreclosure and, in February 2015, Plaintiff reached an agreement to cure his default by the payment of $268,000. Compl. ¶¶ 13-14. The foreclosure judgment was vacated at USB's request and Plaintiff alleges that he was current on his loan. *Id.* ¶ 15.

In March 2015, the servicer of the mortgage loan requested an escrow payment of $1,236.35. Compl. ¶ 17. Plaintiff alleges that the loan did not contain an escrow component. *Id.* This is directly contradicted by the express terms of the Deed of Trust which does, in fact, contain an entire section devoted to escrow. Edling Decl. Ex. 1, at 4-5, § 3. On March 3, 2015, SLS sent Plaintiff a statement indicating that he had an escrow arrearage of $1,908.56. Compl. ¶ 18.

The March 2015 statement indicated total new fees of $3,050.81. Compl. ¶ 19. The Deed of Trust contains language permitting the imposition of fees for various purposes, including services performed in connection with the borrower's default. Edling Decl. Ex. 1, at 10, § 14. The reinstatement letter for Plaintiff's mortgage informed him that he might be responsible for additional fees, which would continue to accrue. Compl. Ex. 1, at 2. The billing statement provided to Plaintiff, Compl. Ex. 2, at 2, lists $3,050.81 in fees associated with the foreclosure of Plaintiff's mortgage. As noted, the Deed of Trust expressly contemplates fees associated with a borrower's default.

Plaintiff did not pay the escrow or fees and instead paid only the interest and

principal. Compl. ¶ 20. By the time of the April 2015 statement, Plaintiff's arrearage had grown to $8,843.72. *Id.* ¶ 21. SLS began to send Plaintiff default letters beginning in June 2015. *Id.* ¶ 22.

Plaintiff disputed the escrow amounts with SLS and, in March 2016, the escrow was removed. Compl. ¶ 23.

On February 14, 2020, Plaintiff send a Request for Information ("RFI") to SLS concerning the past due amounts listed on his statement. Compl. ¶ 25; Ex. 5.

On March 12, 2021, Plaintiff sent another RFI to SLS asking "to verify this debt, including an explanation of various late fees and escrow amounts/suspense holdbacks and the like." Compl. ¶ 26; Ex. 6.

Plaintiff alleges that SLS failed to timely acknowledge the March 2021 RFI and that it eventually responded that "no escrow account was established" but "failed to otherwise respond to the information requested by Plaintiff." Compl. ¶ 27.

On June 21, 2021, Plaintiff disputed credit reporting by SLS with the credit reporting bureaus. Compl. ¶ 28; Ex. 7. On July 22, 2021, Experian responded that it had investigated Plaintiff's dispute and found the reported information correct. *Id.* ¶ 29. Plaintiff asserts that this response indicates that SLS did not conduct a proper investigation of the dispute. *Id.*

## DISCUSSION

Plaintiff bring claims for (i) failure to comply with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35 against SLS (Counts 1 and 2); (ii) breach of contract against "All parties in Privity of Contract"

(Count 3); (iii) breach of the duty of good faith and fair dealing against SLS and USB (Count 4); (iv) violation of the Oregon Unfair Trade Practices Act ("UTPA") against all Defendants (Count 5); (v) violation of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 against SLS (Count 6); (vi) negligent and intentional violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681o, 1681n, against SLS (Count 7 and 8); and (vii) elder financial abuse in violation of ORS 124.110 (Count 9).  Defendants move to dismiss the Complaint in its entirety.

## I.    RESPA

Plaintiffs first claim, Compl. ¶¶ 34-36, alleges that SLS violated the requirements of RESPA, while his second claim, *id.* ¶¶ 37-40, alleges that SLS has a pattern or practice of failing to comply with RESPA.

The Complaint itself does not clearly allege the specific violation of RESPA covered by the first two claims and amounts to a formulaic recitation of the elements of a violation, which falls short of the federal pleading requirements.  The Response clarifies that Plaintiff is alleging a failure to timely respond to Plaintiff's RFI in violation of 12 U.S.C. §§ 2605(e) and (f) and 12 C.F.R. § 1024.36(d), but this is not clear from the face of the Complaint.

Setting aside the general lack of clarity in Plaintiff's allegations, it does not connect any actual damages to the alleged RESPA violation, which is fatal to the claim.  *See Obeng-Amponsah v. Chase Home Fin., LLC*, 624 Fed. App'x 459, 461 (9th Cir. 2015) ("Obeng's other RESPA claim, asserting Defendants failure to respond to his qualified written requests, also fails as Obeng's allegations do not connect the

alleged failure to respond to his qualified written requests with any actual damages." (citing 12 U.S.C. § 2605(f)(1)).

Defendants raise an additional issue—to the extent that Plaintiff's RESPA claim is based on the letter sent on March 12, 2021, that correspondence was sent to the wrong address. Federal regulations provide that servicers may "establish an address that a borrower *must* use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b) (emphasis added). Courts in the Ninth Circuit, including those in the District of Oregon, have held that a qualified written request ("QWR") sent to the wrong address does not trigger the servicer's obligations under RESPA. *Tierney v. Carrington Mortgage Servs., LLC*, Case No. C20-1245RSM, 2021 WL 5280022, at *4-5 (W.D. Wash. Nov. 12, 2021); *see also Nelson v. Fay Servicing, LLC*, No. 3:22-cv-01911-HZ, 2023 WL 6122685, at *6 (D. Or. Sept. 15, 2023) ("Because Plaintiffs did not send the November 2021 letter to the address properly designated by Fay for QWRs or notices of error, Fay did not have a legal duty to respond to the letter.").

Here, the copies of the SLS billing statements submitted as exhibits to the Complaint state that important information and disclosures are included on the reverse side. Compl. Ex. 2, at 1. However, the reverse side has not been included as part of the exhibit. The Court will take judicial notice of the SLS website, which states that Notices of Error and Requests for Information, including Qualified Written Requests "must be submitted in writing to Specialized Loan Servicing LLC P.O. Box 630147, Littleton, CO 80163-0147." *See*

*https://web.archive.org/web/20220406094539/www.sls.net/get-help/contact-us*
(last accessed March 24, 2026).

The request sent by Plaintiff's attorney on March 12, 2021, was sent to an address in Greenwood Village, Colorado, rather than to the designated P.O. Box in Littleton, Colorado. Compl. Ex. 6. Because Plaintiff's counsel did not send the March 2021 letter to the correct address, SLS's duty to respond was not triggered.[2]

The Court will GRANT Defendants' Motion to Dismiss Plaintiff's first and second claims for violation of RESPA. For the reasons discussed below, Plaintiff will be given leave to amend, but in doing so he will not be permitted to allege a failure to respond to the March 12, 2021, letter as a RESPA violation.

## II.    Breach of Contract

To state claim for breach of contract under Oregon law, a plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damages to plaintiff. *Slover v. Oregon State Bd. of Clinical Social Workers*, 144 Or. App. 565, 570 (1996).

The Complaint does not clearly allege the specific contract at issue. It appears to be based on the placement of the escrow charges, Compl. ¶ 44, but, as noted above, the Deed of Trust permits the imposition of escrow charges. Edling Decl. Ex. 1, at 4-5 § 3. In his response, Plaintiff asserts that he may bring a claim for breach of contract because "Plaintiff had an expectation about how he would pay his Mortgage Loan that was frustrated by Defendants." Pl. Resp. 9. But Plaintiff's unilateral

---

[2] The Court notes that the February 12, 2020, letter was sent to the correct address. Compl. Ex. 5.

expectations do not form an enforceable contract, and Plaintiff has not sufficiently pleaded the specific contractual terms breached by the named Defendants.

Furthermore, to the extent that the claim *is* based on the escrow charges, the Complaint alleges that the escrow charges were placed in March 2015, Compl. ¶ 18, which is more than six years before the commencement of this action and so beyond the statute of limitation for a breach of contract action. ORS 12.080.

Finally, the Court notes that Plaintiff appears to seek damages for emotional distress. Compl. ¶ 48. Such harms are not ordinarily recoverable in an action for breach of contract. *McKenzie v. Pac. Health & Life Ins. Co.*, 118 Or. App. 377, 381 (1993). The Court will therefore GRANT Defendants' Motion to Dismiss the claim for breach of contract.

## III.    Breach of the Duty of Good Faith and Fair Dealing

Oregon law "imposes a duty of good faith and fair dealing in the performance and enforcement of every contract," which serves "to prohibit improper behavior in the performance and enforcement of contracts." *Foraker v. USAA Cas. Ins. Co.*, 345 F. Supp.3d 1308, 1309-10 (D. Or. 2018) (internal quotation marks and citation omitted).

However, in order to state a claim for breach of these implied duties, a contract must exist between the parties. *Hoa Van Nguyen v. Specialized Loan Servicing, LLC*, Case No. 3:18-cv-655-SI, 2018 WL 4059292, at *4-5 (D. Or. Aug. 24, 2018). "SLS, as a loan servicer, is not a party to the DOT or the Note." *Id.* at *4. Here, as in *Hoa Van Nguyen*, SLS is the servicer of the loan and not a party to the contract.

In addition, the statute of limitations for a claim for breach of the duty of good faith and fair dealing is, like a claim for breach of contract, six years. *Meunier v. Nw. Mut. Life Ins. Co.*, 51 F. Supp.3d 1023, 1036 (D. Or. 2014). To the extent that this claim is based on the placement of the escrow charges, it is barred by the statute of limitations.

The Court will therefore GRANT Defendants' Motion to Dismiss the claim for breach of the duty of good faith and fair dealing.

## IV.    UTPA

Plaintiff alleges that Defendants "employed unconscionable tactics in dispensing with their duties in servicing the Mortgage Loan and advising Plaintiff." Compl. ¶ 54. Plaintiff alleges that this violates ORS 646.608(1)(u), which prohibits engaging in "any other unfair or deceptive conduct in trade or commerce," and OAR 137-020-0805, which prohibits a list of specific activities in mortgage loan servicing.

In his Response to the Motion to Dismiss, Plaintiff asserts that he has pleaded "that Defendant continues to assert a right to foreclose despite Plaintiff having pleaded timely making all his payments since the date of his cure." Pl. Resp. 10.

In general, UTPA does not apply to loans that originate prior to 2010. *Roisland v. Flagstar Bank, FSB*, 989 F. Supp.2d 1095, 1108 (D. Or. 2013). Here, the Complaint alleges that the loan originated in 2006.

In *Collis v. Rushmore Loan Mgmt. Servs. LLC*, No. 6:17-cv-02062-JR, 2019 WL 2488705 (D. Or. Feb. 7, 2019), the court found that the plaintiff could bring a UTPA claim against the mortgage servicer, even though the loan originated before 2010. In

reaching that conclusion, the court examined the Oregon Court of Appeals decision in *Cullen v. Inv. Strategies, Inc.*, 139 Or. App. 119 (1996). *Cullen* involved a mortgage broker who, in the course of securing a personal residential mortgage for the plaintiffs, failed to disclose that the loan carried a "higher than market interest rate" allowing the defendant to recover a larger fee from the actual lender. *Id.* at 122. The court found that a "non-lender's material nondisclosures or material misrepresentations regarding the character, quality, or cost of such services [was] actionable under the UTPA. Thus, for example, a residential loan broker who misrepresents the costs of its brokerage services is subject to UTPA liability." *Id.* at 127. The *Collis* court found that the plaintiff stated an actionable claim under the UPTA because she alleged the defendant servicer "failed to pay her property taxes as promised, ensured her that it had paid the taxes, failed to return her phone calls, and refused to provide her an accounting." 2019 WL 2488705, at *2. The court noted that these claims were in the nature of misrepresentations regarding the quality or character of the servicer's services rather than issues pertaining to the mortgage loan's attributes such as interest rate or payment amounts. *Id.*

Here, the Complaint does not clearly allege the specific conduct that violates the UTPA and Plaintiff's response characterizes it as asserting a right to foreclose, which is a characteristic of the loan and so beyond the reach of *Collins*. There is no clear allegation that SLS misrepresented the quality or character of its services— rather Plaintiff is aggrieved by the imposition of the escrow charges and fees related to the prior foreclosure, which *are* explicitly part of the Deed of Trust. Furthermore,

USB is not a non-lender and so would not qualify even under the narrow exception established by *Collins*. *See Nelson*, 2023 WL 6122685, at *11 (so holding).

Finally, the Court notes that claims under the UTPA are subject to a one-year statute of limitations. ORS 646.638(6). On its face, the Complaint alleges that the dispute over the escrow charges and fees occurred more than *six* years before the filing of the Complaint and no other clear basis for UTPA liability is alleged in the Complaint.

The Court therefore GRANTS Defendants' Motion to Dismiss the UTPA claim.

## V.    FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, a claimant must show (1) he or she was a consumer; (2) who was the object of a collection activity arising from a consumer debt; (3) the defendant is a "debt collector" as defined by the FDCPA; and (4) engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott. Carruthers*, No. 1:10-cv-01487 OMW SMS, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).

The FDCPA contains a one-year statute of limitations "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). However, "every alleged FDCPA violation triggers its own one-year statute of limitations as provided in § 1692k(d)." *Brown v.*

Page 11 –OPINION & ORDER

*Transworld Sys., Inc.*, 73 F.4th 1030, 1040 (9th Cir. 2023). However, the FDCPA has no discovery rule and so, absent the application of an equitable doctrine, the statute of limitation begins to run on the date on which the alleged violation occurs, not the date on which it is discovered. *Id.* at 1040-41.

Here, the Complaint's references to the FDCPA are largely a formulaic recitation of the elements, which falls short of the pleading standards. In addition, Plaintiff's allegations concerning the escrow charges and the fees assessed for the foreclosure appear to be contradicted by the plain terms of the Deed of Trust. In addition, to the extent that the claim is based on conduct that occurred more than a year before the filing of the Complaint, those claims are time-barred. The Court will GRANT Defendants' Motion to Dismiss the FDCPA claim.

## VI.    FCRA

The FCRA imposes duties on consumer reporting agencies ("CRAs"), furnishers of information to CRAs, and users of information from CRAs, and it confers a private right action on individuals who have been harmed by a breach of such duties. *See generally* 15 U.S.C. §§ 1681c-o; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009).

Here, Plaintiff alleges that the Defendants violated the FCRA by failing to investigate or correct inaccuracies in the reporting of Plaintiff's loan, apparently in connection with the fees attached to his mortgage loan, but, as noted, the Deed of Trust allows the assessment of fees connected to Plaintiff's default and Plaintiff alleges that he has not paid the fees and instead opted to pay only the principal and

interest on the loan.  The Court concludes that Plaintiff has failed to state a claim under the FCRA.

## VII.    Elder Financial Abuse

To state a claim for financial elder abuse under ORS 124.100, a plaintiff must plead that defendants wrongfully took or appropriated money or property of a vulnerable person.  ORS 124.110(1)(a).  Financial abuse under ORS 124.110(1)(a) is defined as "when a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."  A taking of money or property is wrongful when it occurs under circumstances that are injurious, unjust, or unfair, taking into account the special vulnerability of the protected person.  *Adelsperger v. Elkside Development, LLC*, 373 Or. 621, 652-54 (2025), *as modified on reconsideration*, 374 Or. 375 (2025).

Here, Plaintiff alleges that SLS "wrongfully attempted to and did collect funds from Plaintiff they were not entitled to."  Compl. ¶ 68.  It appears that this relates to the escrow charges and the fees assessed in connection with Plaintiff's default.  As previously discussed, those fees and escrow were authorized by the Deed of Trust.  Considering both the Complaint and the judicially noticed Deed of Trust, the Court concludes that Plaintiff has failed to allege a wrongful taking of money.  The Court will therefore GRANT Defendants' Motion to Dismiss this claim.

## VIII.  Leave to Amend

Because many of the defects identified above might be corrected by the allegation of additional facts, the Court will dismiss with leave to amend.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss, ECF No. 17, is GRANTED.  The Complaint is DISMISSED with leave to amend.  Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint.

It is so ORDERED and DATED this ____25th____ day of March 2026.


 /s/Ann Aiken
ANN AIKEN
United States District Judge